IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| KENNETH HAUPT, | ) CASE NO. 3:20-CV-01517-JJH |
| | ) |
| Plaintiff, | ) JUDGE JEFFREY J. HELMICK |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

### I. Introduction

Plaintiff, Kenneth Haupt ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

### II. Procedural History

On January 23, 2018, Claimant filed applications for DIB and SSI, alleging a disability onset date of July 7, 2017 and claiming he was disabled due to schizophrenia, bipolar disorder, migraines, and a learning disability. (ECF No. 12, PageID #: 148). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 243). On June 24, 2019, an ALJ held a hearing,

1

during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 101). On July 10, 2019, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 12, PageID #: 92). The ALJ's decision became final on July 10, 2019, when the Appeals Council declined further review. (ECF No. 12, PageID #: 66).

On July 9, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 14, 16). Claimant asserts the following assignments of error:

> (1) The ALJ erred by failing to properly analyze key medical evidence proffered by Dr. Jha, Mr. Haupt's treating psychiatrist.
>
> (2) The decision erred when it discounted the evidentiary weight of Dr. Jha's medical opinion regarding Mr. Haupt's mental functional capacity.
>
> (3) The ALJ erred when he found that Mr. Haupt did not meet SSA Listing 12.03, which pertains to psychotic spectrum disorders.

(ECF No. 14 at 12).

**III. Background**

    **A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant testified that he heard voices, experienced visual hallucinations, had panic attacks nearly every day, and had migraines two to three times per week. Functionally, he testified he could walk about a mile, had difficulty standing for long periods of time due to his anxiety, could sit for eight to nine hours at a time, could lift 30 to 40 pounds, and could bend and squat. He reported shaking in his hands, particularly when he became overwhelmed. He testified he had difficulty sleeping at night and would nap off and on throughout the day. He further testified he could care for his personal needs, but could not cook due to forgetfulness. The claimant testified he lived with his parents and was encouraged to do yard or housework, but that he

2

> would lose focus. For his mental health impairments, he reported seeing a psychiatrist every three months, who prescribed him medications. He also reported seeing a counselor every two weeks. In addition to hallucinations and panic attacks, he described difficulty being around others, focus issues, and confusion. Finally, he testified that his parents or girlfriend would assist him in managing his medications and assist him in shopping for groceries.

(ECF No. 12, PageID #: 85–86).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's mental health records and symptoms:

> [T]he claimant presented to Firelands Counseling and Recovery on August 30, 2017, with complaints of anxiety and voices in his head. (Exhibit 12F/9-13). He reported paranoia, hearing voices on a daily basis, mood swings, and isolating himself from others. (Id.). He also reported getting along well with family members, having a girlfriend, and seeing his children when he could. (Id.). He also described a hobby of watching and creating 3D animation. (Id.). He was referred for counseling, therapy, and a psychiatric evaluation. (Id.). . . .
>
> Thereafter, he participated in therapy and, on November 15, 2017, he was assessed with schizoaffective disorder, bipolar type, and started on Zyprexa. (Exhibit 12F/5-23). He continued therapy and, at a nursing appointment on February 21, 2018, the claimant was noted to be appropriately groomed, to have appropriate behavior and clear thought process, was oriented times four, and to have a stable mood and normal affect. (Exhibit 17F/33-34). In follow up with his doctor in March 2018, his progress was described as stable and minor changes were made to his medication regimen. (Exhibit 12F/7-8, 24-33). He again continued in therapy and was seen again by his psychiatrist until April 1, 2018, at which time he reported persistent symptoms, for which changes were made to his medications. (Exhibit 17F/56-57). In October 2018, he reported worsening panic attacks, and appropriate changes were made to his medication regimen. (Exhibit 16F/1-2). In the interim, he also received case management services and continued to participate in therapy. (Exhibit 12F/34-61, 16F/5-10, 17F, 19F). Additionally, during this time, it was noted that the claimant would run out of medications, and sought temporary refills from his primary care provider. (Exhibit 15F/19).
>
> No further follow up with his psychiatrist is in the record until

> March 6, 2019, at which time it was noted that the provider repeatedly recommended an inpatient stay for quicker adjustment of his medications, but that he declined same. (Exhibit 17F/81-82). Dr. Jha indicated that the claimant had intermittent auditory and visual hallucinations, and recommended Invega to be titrated up. (Id.). He again reiterated that same could be done quicker on an inpatient basis, rather than over the course of three to four months outpatient, but the claimant again declined to follow this treatment recommendation. (Id.). Thereafter, he again continued in therapy. (Exhibits 19F & 25F).

(ECF No. 12, PageID #: 86–87).

### C. Opinion Evidence at Issue

#### 1. Consultative Examiner—Thomas F. Zeck, Ph.D.

The ALJ summarized the consultative examiner's findings as follows:

> Thomas Zeck, Ph.D., evaluated the claimant in 2005 in connection with a prior claim for benefits. (Exhibit 1F). At that time, the claimant reported a motor vehicle accident in 2003 in which he suffered a concussion, resulting in him being told he had a cognitive disorder. (Id.). He indicated he attended special education classes in high school, graduated, and spent five years in the National Guard. (Id.). He described some depression and anxiety as well as hearing his thoughts in a verbal way as whispers, but denied any visual hallucinations or paranoia. (Id.). He reported additional symptoms of feeling helpless or hopeless, difficulty sleeping, and low energy. (Id.). His concentration, remote memory and immediate recall were in the low average range, and his full scale IQ was 84, which was slightly lower than the 88 he scored on testing the year prior. (Id.). However, he struggled with memory and arithmetic. (Id.).

(ECF No. 12, PageID #: 88). Regarding this opinion, the ALJ stated:

> This opinion, while predating the relevant period, is persuasive, as the claimant alleged in his reports in connection with the current claim and at the hearing that he has had his alleged symptoms "always" or "most of my life." (Exhibits 4E & 5E, 2F). As such, the inconsistencies between the reported symptoms at this evaluation as compared to later examinations and treatment notes is significant and diminished the reliability of the claimant's allegations. Moreover, the findings and opinion are consistent with more recent evidence and opinions.

(ECF No. 12, PageID #: 88).

### 2. Consultative Examiner—Thomas M. Evans, Ph.D.

The ALJ summarized the consultative examiner's findings as follows:

> Thomas Evans, Ph.D., evaluated the claimant on September 7, 2017, at the request of the state agency. (Exhibit 2F). At this time, he reported he had not received mental health treatment for the last 15 years except a single recent appointment to re-establish care. (Id.). He reported lashing out at coworkers in the past, hearing voices, poor sleep, anxiety, low appetite, variable mood, no friends, no difficulties taking directives from supervisors in the past, depression, fatigue, low motivation, crying spells a few times per month, irritability, and suicidal ideation. (Id.). He described experiencing these symptoms as a child. (Id.). He reported being able to drive, doing his own laundry, using the computer, watching movies, and managing a checking and savings account, though without a current source of income. (Id.). On mental status examination, the claimant was well [kept], had normal speech, maintained good eye contact, had a euthymic mood and consistent affect, had no observable features of anxiety, and there was no evidence of psychosis, though he reported having auditory and visual hallucinations every day "all my life." (Id.). He was also oriented times three and cooperative, displayed good concentration and attention, was able to maintain focus without any difficulties, had no psychomotor agitation, had adequate insight, and had poor judgment. (Id.). Dr. Evans described discrepancies between the claimant's reported symptoms at this evaluation as compared to that by Dr. Zeck . . . . Specifically, Dr. Evans noted that the claimant "reported being very anxious throughout the interview but no overt signs of anxiety were observed. Further, he reports significant depression and anxiety symptoms since childhood, but this was not reflected in his answers in the 2005 evaluation. The same for his hallucinations." (Id.). Assessment was Unspecified Anxiety Disorder, Unspecified Depressive Disorder and Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. (Id.). Dr. Evans offered no opinion regarding the claimant's mental functioning.

(ECF No 12, PageID #: 86).

### 3. Consultative Examiner — James N. Spindler, M.S.

The ALJ summarized the consultative examiner's findings as follows:

> James Spindler, M.S., evaluated the claimant at the request of the state agency on July 26, 2018. (Exhibit 10F). The claimant reported suicidal thoughts without a plan, mood swings, difficulty getting along with others on the job in the past, sleep disturbance, poor energy, anger issues, anxiety, and keeping to himself. (Id.). When asked about auditory and/or visual hallucinations, Mr. Spindler noted that the claimant's comments were vague and the claimant reported hearing voices when he was angry with someone, but not at any other time. (Id.). Moreover, when the topic of panic attacks was discussed, the claimant indicated that he did not generally become that stressed out. (Id.). The claimant reported daily activities that included performing light household chores and having photography as a hobby. (Id.). Mr. Spindler noted that the claimant had no evidence of delusion or paranoia, appeared to have average grooming habits, was cooperative, had no apparent difficulty staying focused, appeared mildly depressed, was oriented times three, appeared to be functioning in the low average range of intelligence, appeared to have an adequate level of knowledge for most aspects of daily living, and have reliable judgment. (Id.). Assessment included unspecified bipolar disorder with psychotic features and depressive and anxiety disorder with antisocial personality disorder traits. (Id.). Mr. Spindler specifically noted he was unable to confirm earlier diagnoses of schizophrenia. (Id.). Significantly, Mr. Spindler indicated that, "Due, in large part to his vagueness in answering questions, the examiner does not view Kenneth as a reliable reporter of his problems and, therefore, it is difficult to assess his abilities to succeed vocationally." (Id.). Nonetheless, he opined that the claimant [] seemed intellectually capable of understanding, remembering and carrying out instructions in many job settings; appeared to have the mental ability to sustain a working pace and to maintain a level of attention and concentration that would be sufficient for most job setting[s]; and seemed likely to [] always have some degree of difficulty in taking orders and dealing with the demands of competitive employment. (Id.)

(ECF No. 12, PageID #: 88–89). The ALJ found Mr. Spindler's opinion persuasive "because it is generally consistent with and supported by the evidence and other opinions of record." (ECF No. 12, PageID #: 89).

### 4. Treating Psychiatrist — Anupam Anil Jha, MD

In August 2018, Dr. Jha, Claimant's treating psychiatrist, wrote a letter that stated:

6

> [Claimant] is diagnosed Schizoaffective Disorder, bipolar type. He has been compliant with his treatment. During this time, we have noted symptoms to be particularly troublesome to him and have affected his level of functioning individually and in relationships and certainly in work environments. Consequently we do not believe he is going to be able to work and I do not expect this to change even with treatment over the next 12 months.

(ECF No. 12, Page ID #: 918). The ALJ found that the letter was not persuasive and explained:

> Pursuant to 20 CFR 404.152(b)(c)(i)-(viii) and 416.920(b)(c)(i)-(viii), this opinion is inherently neither valuable nor persuasive to the issue of whether the claimant is disabled; therefore, the undersigned will not provide any analysis about how such evidence was considered.

(ECF No. 12, Page ID #: 89).

Claimant continued to see Dr. Jha for over a year and a half. In June 2019, Dr. Jha filled out a medical source statement, evaluating Claimant's mental capacity. (ECF No. 12, PageID #: 1393). Dr. Jha identified Claimant's diagnoses as schizophrenia and a panic disorder. (ECF No. 12, PageID #: 1394). In a "check the box" form, Dr. Jha found almost every aspect of Claimant's mental functioning to be impaired to an "extreme" degree, including Claimant's ability to adapt to changes, manage himself, complete tasks in a timely manner, and respond to demands. (ECF No. 12, PageID #: 1393–94). Overall, he opined that Claimant had extreme limitations in twenty-five of the thirty-two identified subcategories and marked limitations in six.

The ALJ found that the medical source statement opinion was not persuasive and further explained:

> This opinion is not persuasive because it is inconsistent with all other opinions of record and appears to be based solely on the claimant's subjective complaints, which, as discussed above and noted by several consultative examiners, have varied throughout the claim process and are, therefore, not entirely reliable. Moreover, the notes from Dr. Jha's appointments are minimal and do not support such extreme limitations and, significantly, indicate that the claimant is not completely compliant with treatment

7

> recommendations, suggesting he may not be willing to do what is necessary to improve his condition and, again, diminishing the reliability of his allegations. Finally, there is no indication of supportive findings in the opinion itself, which is simply a "check the box["] form provided by the claimant's representative for completion.

(ECF No. 12, PageID #: 90).

### 5. State Agency Reviewing Psychologists

Two state agency psychological consultants reviewed the opinions of the consultative examiners and Claimant's treating source's notes. (ECF No. 12, PageID #: 130–35, 191–96). The consultants opined that the claimant had moderate limitations in each of the four relevant mental functioning domains. (ECF No. 12, PageID #: 136, 197).

The ALJ considered the opinions and stated:

> These opinions are evaluated as statements from non-examining expert sources. Based on the evidence, the undersigned concludes the consultants adequately considered the evidence of record and, therefore, the opinions are found to be persuasive.

(ECF No. 12, PageID #: 84).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: migraines; carpal tunnel syndrome; left ulnar nerve entrapment and compression; and psychological impairments variously described as: anxiety disorder, panic disorder, bipolar disorder, depressive disorder, schizoaffective disorder, cognitive disorder, and learning disorder. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Postural limitation of no climbing ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent crawling. Manipulative limitation of frequent use of the bilateral upper extremities for reaching, handling, and fingering. Environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery, commercial driving, and unprotected heights. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. No interaction with the general public. Occasional interaction with coworkers, and supervisors. Not to perform supervisory or conflict resolution duties.

(ECF No. 12, PageID #: 82–85).

The ALJ explained his finding that Claimant did not meet one of the listed impairments:

> After careful consideration of the evidence, the undersigned finds that the claimant has experienced a moderate limitation in all four areas of mental functioning. In his function report, the claimant alleged difficulty being around people, completing tasks, with concentration, following instructions, understanding, handling stress or changes in his routine, and managing money. (Exhibits 4E & 5E). He also alleged difficulty with motivation, forgetfulness, and needing reminders to care for his personal needs, take his medications, and tend to his household chores. (Id.). Additionally, he reported being able to care for his personal needs, perform household chores, drive, go grocery shopping, and watch television. (Id.). Finally, he reported no problems getting along with others, though he did not have social interests and tended to stay to himself. (Id.). However, these allegations are inconsistent with multiple consultative examiner findings throughout the claim process. For example, James Spindler, M.S., noted that, when asked about auditory and/or visual hallucinations, the claimant's comments were vague and that the claimant reported hearing voices when he was angry with someone, but not at any other time. (Exhibit 10F). Moreover, when the topic of panic attacks was discussed, the claimant indicated that he did not generally become that stressed out. (Id.). The claimant reported daily activities that included performing light household chores and having photography as a hobby. (Id.). Mr. Spindler noted that the claimant had no evidence of delusion or paranoia, appeared to have average

9

> grooming habits, was cooperative, had no apparent difficulty staying focused, appeared mildly depressed, was oriented times three, appeared to be functioning in the low average range of intelligence, appeared to have an adequate level of knowledge for most aspects of daily living, and had reliable judgment. (Id.). . . . Mr. Spindler specifically noted he was unable to confirm earlier diagnoses of schizophrenia. (Id.). Significantly, Mr. Spindler indicated that, "Due, in large part to his vagueness in answering questions, the examiner does not view Kenneth as a reliable reporter of his problems and, therefore, it is difficult to assess his abilities to succeed vocationally." (Id.). Similar examination findings and opinions were noted by Drs. Zeck and Evans. (Exhibits 1F & 2F).

(ECF No. 12, PageID #: 83–84).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*

### C. Discussion

Claimant raises two issues on appeal. First, "whether the ALJ erred by summarily dismissing the value of key evidence from a treating physician, and failing to analyze the opinions under controlling regulations." (ECF No. 14 at 1). This issue alleges two errors: 1) the ALJ failed to analyze key evidence obtained in the letter proffered by Dr. Jha; and 2) the ALJ

erroneously discounted the evidentiary weight of Dr. Jha's opinion regarding Claimant's mental functional capacity. (ECF No. 14 at 12). Second, "whether the ALJ erred by finding that the claimant did not meet listing 12.03." (ECF No. 14 at 1).

### 1. Weight of medical opinions[1]

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

### a. Dr. Jha's letter

Claimant's treating psychiatrist, Dr. Jha, wrote a letter in support of Claimant's application for disability. Dr. Jha opined that Claimant's medical conditions prevented him from working. The ALJ disregarded this letter, claiming that he did not have to provide any analysis about how the letter was considered pursuant to 20 C.F.R. §§ 404.1520b(c)(3)(i)-(viii) and 416.920b(c)(3)(i)-(viii). These regulations explain that the ALJ is not required to give any analysis about opinions stating that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1520b(c)(3)(i)-(viii), 416.920b(c)(3)(i)-(viii). Claimant admits that Dr. Jha's statement that Claimant cannot work does not have to be considered by the ALJ. However, Claimant states that the letter additionally contained "several pieces of medical evidence regarding his functioning and treatment," including his schizoaffective disorder diagnosis, treatment compliance, and information about troublesome symptoms. (ECF No. 14 at 13). As such, Claimant argues that the ALJ's "cursory dismissal" of relevant evidence was contrary to law. Commissioner responds that the remaining information in the letter was not considered a "medical opinion" under C.F.R. § 404.1515(a)(2) and, thus, the ALJ properly discounted it.

When an ALJ receives medical opinions and prior administrative medical findings, he is required to articulate how persuasive he finds them, considering a list of relevant factors. 20 C.F.R. § 404.1520c(a). A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations" in his ability to perform physical and mental demands of work activities and his ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Prior administrative medical findings are findings "about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5).

13

Judgments about the nature and severity of a claimant's impairments, medical history, diagnoses, treatment prescribed with response, and prognoses are all considered "other medical evidence" and not medical opinions. 20 C.F.R. § 404.1513. The ALJ is not required to explain how he considered medical evidence. 20 C.F.R. § 404.1520c (stating only that the ALJ is required to articulate how he considered medical opinions and prior administrative findings).

Other than Dr. Jha's opinion that Claimant cannot work, the letter discussed Claimant's diagnoses, his compliance with treatment, and his symptoms. None of this additional information can be considered Dr. Jha's "medical opinion." Claimant incorrectly relies on the definition of "medical opinion" under the former regulations that have since been revised. In fact, Claimant references the information in the letter as "several pieces of medical evidence"—something that may have been considered opinion previously, but not any longer. (ECF No. 12 at 13). Moreover, all of the information in the letter can also be found in Dr. Jha's treatment notes, which the ALJ specifically considered and found unpersuasive. (ECF No. 12, PageID #: 86–87). The ALJ, therefore, did not err by not explaining his consideration of Dr. Jha's letter.

### b. Dr. Jha's Medical Source Statement

Dr. Jha also completed a residual functional capacity assessment. In the assessment, Dr. Jha opined that Claimant had "extreme" impairments in many functional domains of mental capacity. This opinion is important because, had the ALJ adopted it, he would have found that Claimant had an "extreme" limitation in at least one area of functioning, meeting one of the requirements for disability. *See* 20 C.F.R. § 404 Subpart P, App. 1. The ALJ, however, found that Dr. Jha's assessment was not persuasive because it was inconsistent with all other opinions of record and based solely on claimant's subjective complaints. Further, the ALJ stated that Dr.

Jha's notes were minimal and did not support such extreme limitations and the assessment was merely a "check the box" form.

Claimant asks the court to reweigh the evidence. Claimant argues that none of the reasons provided were "good reasons" for discounting Dr. Jha's medical opinion. (ECF No. 14 at 15). He states that the reason Dr. Jha's opinion differed from the others was because the longstanding relationship with Claimant gave him better insight. He asserts that Dr. Jha's treatment notes provided detailed observations of Claimant's symptoms and the "check the box form" was not submitted in isolation but was supported by treatment records that span over a year and a half. The Commissioner responds that, in weighing Dr. Jha's opinion, the ALJ followed all requirements and explicitly discussed the supportability and consistency of Dr. Jha's opinion.

As discussed above, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion, including from a treating physician. *See* 20 C.F.R. § 404.1520c(a). Instead, the ALJ simply must consider the evidence in light of proscribed factors and is required to explain only how he considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ, here, adequately explained the supportability and consistency of Dr. Jha's opinion. He found that Dr. Jha's opinion was not persuasive because: 1) it was "inconsistent with all other opinions of record;" 2) it was "based solely on the claimant's subjective complaints" which were inconsistent and repeatedly noted to be unreliable; 3) indicated that Claimant was not completely compliant with treatment; and 4) it was merely a "check the box" form and unsupported by any findings. (ECF No. 12 PageID #: 89–90). This explanation properly considers consistency, supportability, reliability, and other relevant factors.

Moreover, as discussed in greater detail below, substantial evidence supported the ALJ's conclusion. In rejecting Dr. Jha's opinion, the ALJ accepted two state agency psychological

15

consultants opinions that Claimant had no more than moderate limitations in each of the relevant spheres of functioning and three medical consultants' findings that contradicted Dr. Jha's opinion. Claimant's claim, therefore, is without merit. *See Harris v. Comm'r of Soc. Sec.*, 2:20 cv 4356, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming the ALJ's decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c" and "the ALJ's supportability and consistency analysis was supported by substantial evidence").

### 2. Listing 12.03

A claimant "must satisfy all of the criteria" to meet a listing and "bears the burden of showing that an impairment meets or equals a listed impairment." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). As long as the ALJ's finding is supported by "substantial evidence, based on the record as a whole," the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4.

To meet listing 12.03—Schizophrenia spectrum and other psychotic disorders—a claimant must provide medical documentation of either delusions or hallucinations, disorganized thinking, or grossly disorganized behavior or catatonia. 20 C.F.R. § 404 Subpart P, App. 1. In addition, the claimant must prove one of the following, either: 1) an extreme limitation of one, or a marked limitation of two areas of mental functioning—which are: a) understand, remember, or apply information; b) interact with others; c) concentrate, persist, or maintain pace; and d) adapt or manage oneself—or 2) a medically documented history of the existence of the disorder over a period of at least two years, evidence of both ongoing medical treatment or therapy that

diminishes the symptoms, and that claimant has minimal capacity to adapt to changes in his environment. [2] *Id.*

Claimant argues that he meets the criteria of this listing. He asserts that the medical records "repeatedly document the presence of paranoia and active auditory and visual hallucinations." ECF No. 14 at 19. He also states that Dr. Jha's opinion that Claimant had extreme limitations with his ability to interact with others should have been given greater weight. The Commissioner responds again that the ALJ was not bound to adopt Dr. Jha's opinion and Claimant fails to point to any medical opinion stating that he met listing 12.03's requirements.

Substantial evidence supports the ALJ's finding that Claimant did not meet the requirements of listing 12.03. The ALJ considered whether claimant had either two "marked" or one "extreme" limitation in an area of mental functioning. The ALJ found that Claimant had a moderate limitation in all four areas of mental functioning. (ECF No. 12, PageID #: 83). He relied on the persuasive opinions of two state agency psychological consultants who both opined that Claimant had no more than moderate limitations in each of the spheres of functioning. The ALJ reasoned that although Claimant reported many difficulties functioning, his allegations were inconsistent with multiple consultative examiner's findings. Additionally, he considered persuasive Mr. Spindler's finding that Claimant was not a reliable reporter of his problems and his difficulty assessing Claimant due to his vagueness in answering questions. Dr. Zeck and Dr. Evans each noted similar findings.

While Dr. Jha opined that Claimant had "extreme" limitations in various areas of mental functioning, as discussed above, the ALJ was not required to give any special weight to Dr. Jha's

---

[2] Claimant does not argue that the ALJ should have found that he had a medically documented history of the disorder for the past two years. The Court, therefore, discusses only the ALJ's findings regarding Claimant's mental functioning limitations.

opinion. The ALJ considered each of the medical opinions in light of their supportability and consistency and found that Dr. Jha's opinion was not persuasive. Relying on five other medical examiners and evidence in the record, the ALJ concluded that Claimant did not have either two "marked" limitations or one "extreme" limitation in an area of mental functioning. Substantial evidence supports this conclusion. Accordingly, the Court defers to the ALJ's finding that Claimant did not meet Listing 12.03. *See Tyson v. Saul*, No. 20-24-DLB, 2021 WL 1062351, at *4 (E.D. Ky. Mar. 19, 2021) ("[T]he Court declines to reweigh the evidence already evaluated by the ALJ, as she used the correct regulations to inform her opinion and provided substantial evidence supporting her decision to rely on the state agency physicians instead of Plaintiff's own medical providers.").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 1, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).